Where a will is offered for probate 30 years after its alleged execution, and the circumstances surrounding the execution are suspicious and create an impression on the mind of the surrogate that, notwithstanding the evidence of the subscribing witnesses, it is not the will of decedent, the probate will be refused.

2. SAME.

Evidence *held* to require denial of probate of will offered 30 years after its alleged execution.

3. SAME—WEIGHT OF EVIDENCE.

Where proponent of a will for probate testifies that she took the will shortly after its execution and put it in a box, that from that time until a little while before it was offered for probate, nearly 30 years later, she never opened the document to ascertain its contents, was incredible.

In the matter of the last will of Owen Duffy. Probate denied.

C. P. and W. W. Buckley, for Margaret Duffy, proponent.
Phelps, Evins & East, for Andrew Dittrich, contestant.
Francis G. Caffey, for Joseph M. Dittrich, contestant.

CHURCH, S. The will of deceased, which is now offered for probate, was drawn over 30 years ago, and has, ever since the death of the testator, remained in the possession of the proponent. Both of the subscribing witnesses are alive, and gave testimony in a general way conforming to the requirements of the statute; and the proponent insists, therefore, that enough has been shown to justify the admission of the will to probate.

The various cases arising upon probate matters naturally serve as illustrations of the main principles applicable to the proof of wills; but it has been truly said that "no will has a brother," and therefore that no case can be regarded as absolutely decisive of any subsequent matter. The underlying essential is that the evidence shall satisfy the mind of the surrogate that the requirements of the statute have been complied with. This, in my judgment, does not compel the surrogate to follow blindly the testimony of two witnesses as to its proper execution, where all of the circumstances are suspicious and misleading and create in his mind the fixed belief that despite such testimony this will is not the will of the decedent. This is precisely the situation of the case at bar; and it is my opinion, therefore, that the document offered as a will should not be admitted to probate. The facts that lead to this decision are as follows: The proponent claims that, the factum of the will having been shown by the subscribing witnesses, the burden of proof is shifted to the contestant; but to this the contestants respond in my judgment correctly—that the delay in the presentation of this will for probate is not due to any fault or blame on their part or on the part of any person other than the proponent, and that, by reason of such delay, the ordinary opportunity which a contestant would have to obtain evidence on the subject and to produce witnesses, together with

the opportunity to test closely the knowledge and memory of the witnesses actually taking the stand, has been almost entirely destroyed, and that, although they are unable to produce direct proof on the subject, all the facts and circumstances lead irresistibly to the conclusion that such will should be refused probate.

The testimony of one of the subscribing witnesses to the will shows that he recalls practically nothing of the transaction involving the execution of the alleged will save that he signed the document. Instead of having the slightest remembrance as to the testamentary capacity of the deceased, or as to what the latter did or said on the occasion in question, his only evidence, apart from his own signature to the paper, was to the effect that "everybody seemed satisfied with what was being done." This would always be the case where a number of conspirators were inducing a person to make a will. The testimony of the lawyer who drafted this will, who was also one of the witnesses to its execution, is very remarkable. Without going over it in detail, it may be said, generally, that he describes with the same minuteness what took place at the time of the drafting and execution of this alleged will as if the transaction had occurred only a few days before his appearance on the witness stand. This of itself would excite suspicion, as it is beyond belief that any attorney, throughout a busy practice, would be enabled to recollect the details of a conversation had with a client over 30 years ago. That this cannot be the case is shown by the fact that, when the witness pretends to describe the desires of the testator, his testimony is in direct contradiction to the will itself. The importance of this to my mind is that it establishes that his memory upon this subject is false; and, if it be faulty with respect to the provisions of the will which he purported to know, how can it be said not to be faulty with respect to the manner of its execution? It is not pleasant to have sinister suspicions as to the testimony of any witness; but, where the witness displays what would be an astonishing feat of memory, if correct, and it is thus shown to be false, the only deduction is that he falsified for a purpose.

There are cases holding that, where witnesses have forgotten the circumstances other than the fact that they recollect acting as witnesses to the will, then a properly drawn attestation clause will suffice to justify the admission of the will to probate. But it does not seem to me that the principle of these cases can be used for the benefit of the proponent, as here the witnesses have not claimed that their memory failed them in the matter, other than that the signatures are theirs, and that they remember they were present at the execution of a will; but it is apparent that they have sought to make assurance doubly sure by not only testifying that they recall the transaction, but also its details. Therefore it is but natural to infer that they remember absolutely nothing on the subject and that their entire testimony should be rejected.

There are other circumstances in the case which strongly corroborate this view of the occurrence. The testator at the time in question was 98 years of age. That he was manifestly in his dotage is shown by the fact that he attended to no business matters whatever; his sole occupation being to watch a flock of geese to prevent their wandering away.

The evidence of such persons as recall the old man's condition at that
time tends to show that he was then in the last stages of senility. The
action of the proponent and such of the children as benefited by the
will, living at the death of the testator, strongly confirms this theory,
and also renders probable the theory that there was an implied under-
standing among the heirs at law of the deceased that this alleged will
was defective and should never be offered for probate, as the children
of the deceased have all these years acted upon the assumption that he
died intestate. Deeds have been made between them of their undivided
interests in the real estate left by their father and disposition has been
made of the personalty; and the proponent only presents this will when
litigation ensues between her and the representatives of some of her de-
ceased brothers and sisters.

If this will was valid and effectual, it is hard to understand why she
should have obtained the deeds in question or why she should have
withheld the presentation of the alleged will until the commencement of
the litigation referred to. Appreciating this fact, she endeavors to rid
herself of the suspicion thus aroused, and swears that although she
knew that the paper in question was intended to be the last will of her
father, and although she took it after its execution and put it in a box,
from the time she received it, shortly after its execution, until a little
while before it was offered for probate, she never opened the document
or looked at it to ascertain its contents. I am frank to say that I can-
not believe this statement. Without following the common assertion
as to the curiosity of the female sex, it is assuredly beyond the realm of
probability that any person would receive a will under these circum-
stances and keep it for 30 years after the testator's death without ever
having once opened it to see what it contained. If this statement is un-
true, and if this woman, therefore, has deliberately told this untruth, it
must be from a motive or disposition to hide some fact the disclosure
of which she fears will be disastrous to her case, and thus the fact would
naturally be either knowledge that the will in question was invalid, or
that she herself had admitted to her brothers, who are now dead and
gone, that it was invalid, and that there was an agreement that it should
not be presented for probate.

All of these circumstances combined, in my mind, are sufficient to
overcome the mere attempt at the proof of the factum of the will, as
contained in the testimony of the subscribing witnesses; and, as the evi-
dence fails to satisfy me that the paper was legally and properly ex-
ecuted, I will deny to it probate.

Let findings and decree be presented accordingly.

Probate denied.